**Dover Township Board of Supervisors v. DER**

*James A. Holtzer, Charles B. Zwally* and *Lewis P. Sterling,* for appellants/respondents/defendants. *John P. Krill, Jr.,* for Commonwealth.

WATERS, *Chairman,* August 1, 1980—These matters come before the board as appeals from decisions of the department to deny sewer extensions, and plan revisions that would require discharges to the Dover Township sewage treatment plant which is alleged to be hydraulically overloaded. The various appeals, all arising from the same plant capacity limitations, were consolidated for hearing. Although none of the appellants presently have building permits for the homes they desire to construct, there are various reasons why they deem themselves entitled to the relief they request.

### FINDINGS OF FACT

1. Appellants are: Richard H. Waltersdorff, Inc., a corporation with offices at Green Briar Road, York, Pa., hereinafter Waltersdorff; Derry Associates, a general partnership with offices at Pikesville, Md., hereinafter Derry; and the Board of Supervisors of Dover Township, York County, hereinafter township.

2. Appellee is the Commonwealth of Pennsylvania, Department of Environmental Resources, hereinafter DER.

3. On July 3, 1978, DER disapproved a plan revi-

sion that had been adopted by Dover Township as part of its official plan under the Pennsylvania Sewage Facilities Act of January 24, 1966, P.L. 1525 (1965), as amended, 35 P.S. § 750.1, et seq.

4. The plan revision was for the development of a 12 lot residential subdivision known as "Donwood," located in Dover Township.

5. The basis for DER's disapproval of the proposed plan revision for Donwood was that extension of the public sewer of the Dover Township sewage system was proposed for the subdivision and that a hydraulic overload existed at the Dover Township sewage treatment plant.

6. On July 5, 1978, DER disapproved another proposed plan revision adopted by Dover Township as a revision to its official plan under the Pennsylvania Sewage Facilities Act. The plan revision was for an 81 lot residential subdivision known as "Emig Mill Manor Phase II," proposed by appellant.

7. The basis for the denial of the Emig Mill Manor plan revision was that extension of the public sewer of the Dover Township sewage system was proposed for the subdivision and that a hydraulic overload existed at the Dover Township sewage treatment plant.

8. On December 13, 1978, DER refused to approve an application for a sewer extension permit for a development known as "Rainbow Hills Subdivision, Section 2" owned by Derry Associates and located in West Manchester Township, York County. The basis for DER's action was the existing hydraulic overload at the Dover Township sewage treatment plant, to which sewage from the project would be conveyed.

9. On July 3, 1979, DER disapproved a proposed plan revision for a residential development of

Richard H. Waltersdorff known as "Country Club West Garrison Drive" located in Manchester Township, York County. The basis for the disapproval was that the Dover Township sewage plant, to which sewage from the project would be conveyed, was in a projected overload status.

10. Appellants filed timely appeals of DER's actions and on September 6, 1979 these appeals were consolidated under the present caption.

11. The hydraulic capacity of the Dover Township sewage treatment plant is 1.75 million gallons per day (mgd).

12. In June of 1978, the Dover Township Sewer Authority submitted its annual report to DER pursuant to 25 Pa.Code §94.

13. The 1978 Annual Report of the Dover Township Sewer Authority projected that a condition of hydraulic overload would be reached at the sewage treatment plant by 1982.

14. A condition of actual hydraulic overload developed much sooner than projected in the township's annual report. From January 1 to January 30 of 1979, the average daily flow to the sewage treatment plant was 3.39 mgd. From January 31 through March 1, 1979, the average daily flow to the plant was 2.15 mgd. From March 2 through March 31, 1979, the average daily flow to the plant was 2.69 mgd.

15. Derry Associates is a developer engaged in the development of land in the Township of West Manchester pursuant to approved subdivision plans under the title "Section II, Rainbow Hills."

16. Derry Associates has received sewer permits for 32 of the 66 lots contained in Section II, Rainbow Hills.

17. There was no existing hydraulic overload at the receiving treatment plant in Dover Township

during the period June 1978 through and including December 1978, when the applications here in question were made, and were denied by DER.

18. A hydraulic overload was determined to exist at the receiving treatment plant in Dover Township during the period January through March 1979, on the basis of measurements of the reported flows through the plant as calculated on the basis of three consecutive 30 day averages.

19. The discharge monitoring reports indicate that the flows through the receiving treatment plant in Dover Township dropped below capacity in May 1979 and June 1979, reflecting no hydraulic overload during those months.

20. The most recently available information indicates that there is presently no hydraulic overload at the Dover Township treatment plant.

21. Pursuant to the terms of a Manchester Township Ordinance, Derry Associates has paid money to West Manchester Township for the purpose of reserving sewer capacity since the enactment of the aforesaid ordinance in December 1976, at the rate and in the amount of $76 per year per lot for the 34 lots in question.

22. A presently existing and approved development, Shiloh East, which development is also in West Manchester Township, has 56 unused sewage permits issued by DER for connections to the receiving treatment plant in Dover Township.

23. By letter dated January 4, 1979, West Manchester Township wrote to the Environmental Hearing Board in response to the action of DER in denying the sewage permit applications of Derry Associates and, in the course of that letter, indicated that the treatment capacity presently available, as a result of the Shiloh East development's connection to the city of York treatment plant, in-

stead of the receiving treatment plant in Dover Township, should be transferred to Derry Associates.

## DISCUSSION

Although we have five separate appeals, each arises because of a hydraulic overload which occurred at the Dover Township sewage treatment plant in York County, Pa. The plant in question has a treatment capacity of 1.75 mgd and it was expected to reach this load by 1982 according to the annual report of the Dover Township Sewer Authority. In fact, the monthly reports for January 1 through March 31, 1979 indicated that the plant exceeded the 1.75 capacity[1] by substantial amounts. Appellants cannot reasonably maintain that the plant was not hydraulically overloaded during this period.[2]

The appeal of Derry Associates was filed on December 29, 1978 from the refusal of DER by letter of December 13, 1978 to approve an application for a sewer extension to serve Section II Rainbow Hills for an additional 34 homes,[3] in West Manchester Township. Although DER based its permit denial on the hydraulic overload, appellant argues that

---

1. In January the average daily flow was 3.39 mgd, February 2.15 mgd and March 2.69 mgd.

2. The regulation 25 Pa. Code 94.1 defines "Hydraulic overload" as: "The condition that occurs when the hydraulic portion of the load, as measured by the average daily flow entering a [sewage treatment] plant, exceeds the average daily flow upon which the permit and the plant design are based . . . or when the flow in any portion of the system exceeds its hydraulic carrying capacity [during a recent three-month period.]"

3. Derry Associates has already received permits for 32 of its 66 lots.

the first overload did not actually occur until January 1979. Although this is true, appellant has overlooked 25 Pa. Code §94.11, which provides: "A sewer extension shall not be constructed if the additional flows contributed to the sewerage facilities from the extension will cause the plant, pump stations, or other portions of the sewer system to become overloaded . . ."

Inasmuch as there was no actual hydraulic overload at the Dover Township treatment plant until March of 1979,[4] did DER abuse its discretion in refusing sewer extensions as early as June of 1978? This question can only be answered by some reference to 25 Pa. Code §94.2 and §94.11 which are concerned with a "projected overload" as the basis for a sewer extension denial. According to regulation 94.2 the purpose of the chapter is not only to limit additional extensions and connections under conditions of actual or projected overload but also to prevent, as much as possible, the occurrence of such overloads."

The regulations set up a requirement for the filing of an annual report by sewage plant permittees, as a mechanism for DER to determine whether there is a projected hydraulic overload.[5] It is clear

4. Although the plant exceeded its permitted capacity in January 1978, the definition for "hydraulic overload" in the Regulation 25 Pa. Code §94.1 is: "The condition that occurs when the hydraulic portion of the load, as measured by the average daily flow entering a [sewage treatment] plant, exceeds the average daily flow upon wich the permit and the plant design are based . . . or when the flow in any portion of the system exceeds its hydraulic carrying capacity [during a recent three-month period.]"

5. Section 94.12 provides that this report be filed by June 30 of each year and include inter alia "(ii) A projection of the anticipated hydraulic loading on the [sewage treatment] plant for each of the next five years."

that if substantial overloading is to be accomplished, obviously the only time such overload can be prevented is *before* the 1.75 mgd capacity is reached. The very nature of the problem makes foolproof or precise judgments impossible. When we view the actions of DER in December in the light of what actually happened in January, February and March, 1979, we cannot say that it abused its discretion regarding implementation of the regulation above cited. Kravitz v. DER, EHB Docket no. 77-118-W, October 30, 1978. We believe this to be the quintessential case for application of the regulation. If it did not serve to put the brakes on further development under the circumstances of this case one would be hard pressed to find proper application of the provision. Derry further argues that inasmuch as the Dover Township plant did fall below its treatment capacity level for a number of months *subsequent* to DER's permit denial, this board should now remand the matter to DER in order to determine whether there is present capacity to be allocated. This presents a more difficult decision. We have followed a similar procedure recently in Borough of Mercer and Mercer Borough Sewage Treatment Authority v. Commonwealth of Pennsylvania, Department of Environmental Resources and County of Mercer, EHB Docket no. 79-070-S issued June 6, 1980. In that case there was a newly constructed public facility which needed immediate sewer service,[6] and there was some indication that the sewer ban itself could be lifted if further newly acquired evidence as to re-

---

6. The county had just completed a badly needed addition to its juvenile detention center.

duction in hydraulic load could be presented to the board.[7]

In Mercer, supra, the board was concerned with a sewer ban that was issued based on a hydraulic overload. We deem the prohibition of sewer extensions, with which we are here concerned, based also on a hydraulic overload, to be an analogous situation. We there said:

"Perhaps, in the months between the date of the hearing and the date of this Adjudication, there has been a continuing and effective program which has resulted or will result in the overall reduction of this overload. At this posture, however, we have no basis upon which to conclude that such a program exists. As such, we hold that this second element necessary for ban modification under Section 94.41 (3) has not been established."

In this case there is some evidence that the hydraulic overload is being abated subsequent to the peak periods of January, February and March 1979. In fact judging by the latest available figures, the plant is not in a hydraulically overloaded status.[8]

---

7. Further hearings were ordered to take place within 20 days, to allow appellants further opportunities to show results of on-going flow reduction programs.

8. On cross-examination the chief witness for DER testified as follows:

Q. Now, isn't it a fact that in May of '79 the flow dropped to 1.285 average?

A. Yes.

Q. And in June of 1979 it dropped to 1.113?

A. Yes.

Q. Now, do you know the reason for the drop in the flow for those months?

A. The specific reason I do not know, okay. It could be a combination of several things.

460

Although we do not reject the conservative approach taken by DER in this matter, it does appear as though there was in June of 1978,[9] and that maybe there still is, some growth capacity, to be allocated at the Dover plant. With this in mind we will not simply dismiss the appeals for the failure of

Q. And what might they be?

A. Extraneous flow entering the sewer system, such as infiltration inflow.

Q. Well, could it be could one of the reasons be that the various townships took steps to correct infiltration?" (Notes of testimony, page 21)

"The Witness: Would you repeat the question?

By Mr. Sterling:

Q. I asked, Is there a possibility that the townships have taken steps to prevent the flow of any infiltration?

The Examiner: Would that account for the drop in the figures, is what he's asking. Could that account for the drop in the figures?

The Witness: It's possible that that may have had an effect.

By Mr. Sterling:

Q. Have you been in touch with the Dover Township sewer plant or their engineer or with any of the townships concerning any infiltration problems?

A. Yes, I have.

Q. And as a result of your contact, do you know whether they've taken any steps?

A. I believe they have taken some steps, okay. Whether or not that's going to be effective in removing this infiltration inflow is another story.

Q. Well, you can't predict whether it will be or won't; isn't that a fact?

A. (Gesture).

The Examiner: Your answer?

The Witness: That's correct.

Mr. Sterling: That's all I have at this time." (Notes of testimony, pages 22 and 23)

9. Although the plant capacity is 1.75 mgd, one three month period's figures following June 1978 were: September .839; October .801, and November .823.

appellants to carry their burden of proof, but, following Mercer[10] we will remand the case to DER for reconsideration in light of any updated monthly flow data.

The final argument of appellant Derry is that certain reserved capacity evidenced by 56 sewer permits at the Dover Township treatment plant, which was to be used by one Shiloh East development, is no longer needed and should therefore be made available for its, Derry's development. West Manchester Township apparently has an ordinance which requires substantial payments in advance to reserve sewer capacity for each building lot. Also, Derry presently has 34 such lots, on which payments have been made yearly since 1976 to reserve capacity but no permits were actually issued as was done for Shiloh East. Although West Manchester Township, where the building is to occur, favors the transfer of the alleged sewer capacity, from one builder to another, we cannot reach that question unless and until such capacity is shown to actually exist—i.e. that there is presently no hydraulic overload. Until such time, we deem this argument to be without merit.

---

10. We there said, page 20:

"We remand because it is clear to this Board that there now must be in existence sufficient data which can be analyzed to determine whether steps have indeed been taken which have resulted in the reduction of the overload condition at this plant on an on-going basis. Furthermore, DER should now be in a position that it has evaluated the overload reduction plan submitted by the Borough. Finally, unless the County was less than candid about carrying through its plan to inspect and, possibly, correct additional portions of its sewage collection line, DER should now have information about the effect of such a program on the hydraulic overload condition at this plant."

## CONCLUSIONS OF LAW

1. The board has jurisdiction over the parties and subject matter of this appeal.

2. Pursuant to 25 Pa. Code §94.11 and §94.22 DER may properly refuse sewer extension permits based on a projection of hydraulic overload as well as a presently existing overload.

3. Inasmuch as substantial discretion is given to DER under the above provision, it may be required by this board to closely monitor monthly sewage flow reports and allocate remaining capacity based on the most current data available.

4. Where there has been no showing that there is sewage treatment capacity remaining at a plant alleged by DER to be hydraulically overloaded, the board will not determine whether sewage permits or reserved capacity can be transferred from one prospective builder to another.

## ORDER

And Now, August 1, 1980 the appeals in the above matter are hereby remanded to DER for further consideration consistent with this adjudication.